**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| LADELL K. BURRUS, individually and on behalf of others similarly situated, )<br><br>Plaintiff )<br><br>vs. )<br><br>CHINSKY RESTAURANT GROUP, INC., d/b/a PENN STATION EAST COAST SUBS<br>Defendants ) | **FLSA COLLECTIVE ACTION COMPLAINT UNDER 29 USC § 216(b)**<br><br>CASE NO. 1:19-cv-999 |

*PLAINTIFF'S COLLECTIVE ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND REQUEST FOR TRIAL BY JURY*

### *I.  INTRODUCTION*

Plaintiff Ladell K. Burrus ("Burrus") is pursuing his own individual claims for race discrimination against Defendant Chinsky Restaurant Group, Inc. d/b/a Penn Station East Coast Subs ("Chinsky Group") pursuant to Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866.  Burrus was discriminated against because of his race, African American, and unlawfully terminated from his job with Chinsky Group on March 30, 2018, the first day he was able to return to work after having been shot and injured by an armed robber.  Burrus will also pursue an individual tort claim against Chinsky Group for retaliatory discharge based upon Burrus' efforts to make a worker's compensation claim against Chinsky Group for his injuries caused by his workplace shooting.

Additionally, Burrus brings this collective action lawsuit against Chinsky Group to address class-wide minimum wage violations committed by Chinsky Group employees subjected

to kickback deductions to cover costs of work uniforms. Burrus will serve as the representative plaintiff in the FLSA collective action.

Finally, because he was involuntarily terminated, Burrus must pursue his state law wage claims against Chinsky Group pursuant to the Indiana Wage Claims Statute. I.C. 22-2-9. Chinsky was subjected to illegal wage deductions which violated the provisions of the Indiana Wage Assignment Statute, particularly the provisions contained in I.C. 22-2-6-2.

## II.  FACTUAL ALLEGATIONS

1. Burrus is a resident of the State of Indiana, and is domiciled in Indianapolis, Marion County, Indiana.

2. Chinsky Group is a restaurant headquartered in Indianapolis, Marion County, Indiana.

3. Chinsky Group hired Burrus to work as a crew member at one of its Penn Station restaurants which was located in Speedway, Indiana.

4. At all times, Burrus performed good work and met all of Chinsky Group's reasonable expectations.

5. On the night of January 28, 2018, just before the Penn Station restaurant was to close, an armed robber entered the restaurant, grabbed Mr. Burrus and placed a handgun in Mr. Burrus' back. The robber demanded all of the cash in the store and continued to hold Mr. Burrus at gunpoint while the other crew members got the restaurant's cash. The crew member with the cash gave the money to the robber. The robber then shot Mr. Burrus at close range through his back (near his right shoulder) and the bullet ripped through Mr. Burrus' chest on his right side

6. Mr. Burrus was hospitalized at the Eskanazi Hospital in Indianapolis and treated for his gunshot wound. Workers' compensation benefits covered Mr. Burrus' hospitalization,

treatment and rehabilitation, but Chinsky Group's workers' compensation insurer rushed Mr. Burrus through treatment.  For example, Mr. Burrus has not been compensated for any permanent impairment stemming from the injury, nor has he been offered compensation.  Burrus is pursuing claims of Indiana common law retaliation against Chinsky Group for terminating him in retaliation for exercising his right to workers' compensation benefits.

7. Chinsky Group's workers' compensation physician released Burrus to return to work at the end of March 2018.  Burrus' first scheduled day of work was March 30, 2018.

8. When Burrus reported for work on March 30, 2018, he was met by the Chinsky Group owner, Robert Chinsky, and a uniformed police officer.  Robert Chinsky had the police officer tell Burrus he was fired.  On behalf of Chinsky, the police officer falsely accused Burrus of having something to do with the January 28th robbery, where Burrus was shot, and another robbery of the Speedway Penn Station that occurred in December 2017.

9. In addition to telling Burrus that he believed Burrus had something to do with the robberies, the officer claimed that he had conducted a background search on Burrus and some of Burrus' friends.  The officer then proceeded to threaten Burrus if Mr. Burrus or his friends ever set foot in that Penn Station restaurant or any of Chinsky's other Penn Station restaurants again.

10. To provide context, Robert Chinsky is Caucasian.  The police officer was Caucasian.  The person who shot Mr. Burrus on January 28, 2018 is an African American male.  Burrus is African American.

11. The armed robber has not been caught and has not been identified.  Burrus certainly had nothing to do with the robbery or the robber's decision to shoot him with a gun.  The December 2017 robbery at the Speedway Penn Station had absolutely nothing to do with Burrus.  He was not working that day.  He was not present.

12. Mr. Chinsky's accusations and actions are extraordinarily offensive and racist. Mr. Chinsky apparently jumped to a conclusion that Burrus must have somehow been involved in the robbery because he and the armed robber were both African American. Mr. Chinsky certainly did not make similar accusations or ask the police officer to conduct background investigations into his Caucasian Penn Station employees at the Speedway restaurant.

13. Mr. Chinsky's disparate and racist treatment of Burrus warrants a finding of race discrimination against the Chinsky Group under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866. Burrus was discriminated against because of his race, African American. He was subjected to an unauthorized background investigation by the police and terminated for reasons his similarly situated Caucasian coworkers were not.

14. Chinsky Group's outrageous and offensive claim that it fired Burrus based upon some suspicion that he had something to do with his own shooting and a store robbery is absolutely false and pretextual. But for the color of his skin and/or the fact that Burrus made a worker's compensation claim for his serious work injury and needed hospitalization and significant medical leave for treatment of his gunshot wound and recovery, Burrus would not have been terminated or disciplined in any way.

15. At the time of Burrus' work injury, a gunshot wound, Burrus' employment was in no jeopardy whatsoever. He actually had been given a pay increase and was being prepared for a work promotion.

16. Chinsky Group's racist and retaliatory termination of Burrus' employment was intentional, willful and made with reckless indifference to Burrus' rights and warrants the imposition of punitive damages against Chinsky Group.

17. By way of his Complaint, Burrus is seeking all available damages, including all

equitable relief, all available compensatory damages, all available punitive damages, lost wages and benefits. He is seeking payment of all of his reasonable attorney's fees, costs and expenses.

18. Chinsky Group paid Burrus his wages on an hourly basis. When he was hired in June 2017, Chinsky Group paid Burrus at the rate of $8.75 per hour. In Burrus' first two pay checks from Chinsky Group, Burrus was subjected to unlawful wage deductions to cover the costs of uniforms Chinsky Group required Burrus to purchase and to wear for his work. In his first check dated June 19, 2017, Burrus was subjected to a $20.00 deduction in a category Chinsky Group called "uniforms." In this June 19, 2017 pay check, Burrus was paid gross wages of $44.45 for 5.08 hours of work, but, after the unlawful "uniforms" deduction was taken, Burrus' actual net pay was reduced all the way down to $18.82. Obviously, this deduction was significant enough that Burrus was not even paid a FLSA minimum wage of $7.25 per hour for this first two week pay period. Moreover, this $20.00 deduction for "uniforms" was far more than permitted for purchase costs of uniforms under the Indiana Wage Assignment Statute, see I.C. 22-2-6-2(b)(14), as the deduction was taken for far more than 5% of Burrus' "weekly disposable earnings." In his second check, dated July 3, 2017, Burrus was paid gross wages of $502.69 for 57.45 hours of work over a two week pay period, but, after the unlawful "uniforms" deduction was taken, Burrus' actual net pay was reduced to $396.32. In this pay period, the unlawful "uniforms" deduction of $20.00 was again greater than the maximum amount permitted for purchase costs of uniforms under the Indiana Wage Assignment Statute, see I.C. 22-2-6-2(b)(14), as the deduction was taken for more than 5% of Burrus' "weekly disposable earnings."

19. Chinsky Group requires its Penn Station employees to purchase and wear uniforms. Chinsky Group similarly subjects all of its employees to unlawful wage deductions for costs of uniforms and, as it did to Burrus in the example in the paragraph above, takes

deductions without consideration or compliance with the Fair Labor Standards Act or with the Indiana Wage Assignment Statute. I.C. 22-2-6-2.

20. Chinsky Group's deductions for costs of uniforms it required employees to purchase and wear for Chinsky Group's own benefit are illegal wage deductions that constitute unlawful kickbacks and violate the "free and clear, no kickback" rule under the FLSA. See 29 CFR § 531.35. These wage deductions which violated the free and clear, no kickback rule under the FLSA cause class wide violations of the FLSA minimum wage.

21. Burrus is specifically alleging that Chinsky Group has taken illegal wage deductions for uniform costs in violation of the FLSA, see 29 CFR § 531.35, and in so doing, CarDon has committed minimum wage violations against Burrus and each and every other similarly situated Chinsky Group employee every time such a kickback deduction was taken in a week an employee was paid less than a FLSA minimum wage. Chinsky Group's illegal deduction scheme was performed intentionally, willfully and in knowing violation of the FLSA.

22. Every Chinsky Group employee was harmed in the exact same way, regardless of the job held by the employee. Chinsky Group has and had no legal authority to take any of the unlawful kickbacks/ wage deductions at issue in this FLSA collective action, particularly as employees cannot waive their right to be protected by the FLSA.

23. For himself and for every similarly situated Chinsky Group employee denied payment of a minimum wage based upon deductions for "uniforms," Burrus will pursue collective action claims under the FLSA. Burrus seeks all unpaid minimum wages, all liquidated damages, and payment of his reasonable attorney's fees and costs.

24. For himself, Burrus seeks all illegally deducted wages taken in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, and the Indiana Wage Claims Statute, I.C. 22-

2-9. Burrus is specifically alleging that Chinsky Group took deductions from his wages without fully complying with all of the conditions required under the provisions of the Indiana Wage Assignment Statute at I.C. 22-2-6-2.  Stated differently, Chinsky Group violated Indiana law by taking wage deductions from Burrus' pay without first obtaining a wage assignment that fully complied with all conditions required under I.C. 22-2-6-2.  Pursuant to the Indiana Wage Claims Statute, Burrus seeks all unpaid and illegally deducted wages, all liquidated damages, and payment of his reasonable attorney's fees and costs.  Chinsky Group's illegal deductions were intentional, reckless and not taken in good faith.

### III.  COLLECTIVE ACTION ALLEGATIONS

25. Burrus incorporates herein by reference paragraphs 1 - 24 above.

26. This Complaint is brought as a collective action under the FLSA on behalf of Burrus and other current and former Chinsky Group employees who were similarly denied payment of minimum wages under Chinsky Group's illegal kickback scheme involving deductions for costs of uniforms.

27. This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Burrus and all Chinsky Group current and former employees who were damaged by Chinsky Group's compensation system which required and resulted in illegal deductions for costs of uniforms.  By virtue of the "collective action," Burrus represents the identical and/or similar interests of former and current Chinsky Group employees denied minimum wages under the same circumstance.  Burrus anticipates that other Chinsky Group employees and former employees will opt in to the action.

28. The number of Chinsky Group current and former employees who will be members of this collective action is so great that joinder of all members is impractical.  Instead,

Burrus will pursue discovery to obtain the names of the other current and former Chinsky Group employees, to provide notice of the collective action, and to offer the opt-in opportunity.

29. Particularly with the types of minimum wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

30. Burrus' claims are typical of the claims of the whole collective group of current and former Chinsky Group employees harmed by Chinsky Group's illegal payment practices which result in minimum wage violations.

31. Burrus will act to fairly and adequately protect the interests of the entire collective group of current and former Chinsky Group employees.

32. A collective action is superior to other available means for the fair and efficient prosecution of these wage claims against Chinsky Group. For example, to prove Chinsky Group's illegal minimum wage practices, Burrus and other members of this collective group would seek in discovery records about all similarly situated current and former Chinsky Group employees who were similarly subjected to uniform cost deductions and denied payment of a full minimum wage. Individual lawsuits by the members of the collective group could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

33. A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of FLSA wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not,

because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

34. A collective action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

## IV. JURISDICTION AND VENUE

35. Burrus' claims under the FLSA, 29 USC § 201 et seq., Title VII of the Civil Rights Act of 1964, 42 USC § 2000e et seq, and the Civil Rights Act of 1866, 42 USC § 1981, raise federal questions of law and this Court has jurisdiction over the subject matter of this complaint pursuant to 28 USC § 1331. Additionally, this Court has supplemental jurisdiction over Burrus' Indiana common law claim for retaliatory discharge and wage and hour claim under the Indiana Wage Claims Statute, as those claims arise under related circumstances and common facts.

36. This Court is the appropriate venue for this cause of action as Burrus worked for Chinsky Group in Marion County, Indiana. 28 USC § 1391.

## V. PARTIES

37. Burrus is a resident of Indianapolis, Marion County, Indiana.

38. Chinsky Group employed Burrus to work for it in Marion County, Indiana.

## VI. ADMINISTRATIVE PROCEDURES

39. Burrus has complied with all of the administrative procedures that are conditions precedent to the filing his race discrimination claim under Title VII of the Civil Rights Act of 1964. Burrus received his Notice of Right to Sue from the Equal Employment Opportunity Commission dated February 25, 2019.

40. Burrus has complied with all of the administrative procedures that are conditions precedent to the filing of his claim under the Indiana Wage Claims Statute. Because Burrus was involuntarily terminated from employment by Chinsky Group, Burrus' wage claim to recover illegally deducted amounts and underpaid wages arises under the Indiana Wage Claims Statute, I.C. 22-2-9. Burrus obtained a letter from the Indiana Attorney General's Office dated August 24, 2018 which permits his attorney to file this wage claim on Burrus' behalf as the Indiana Attorney General's "designee."

## VII.  STATEMENT OF CLAIMS

### A.  RACE DISCRIMINATION CLAIM UNDER 42 U.S.C. § 1981

41. Burrus alleges and incorporates herein by reference paragraphs 1 through 40 above.

42. Burrus had an employment relationship with Chinsky Group, thereby creating a relationship that is contractual in nature between Burrus and Chinsky Group.

43. Chinsky Group's discriminatory actions have violated Burrus' rights which are protected by the Civil Rights Act of 1866, 42 U.S.C. § 1981.

44. Specifically, Burrus was treated in a disparate manner in the terms, conditions and privileges of his employment as compared to other similarly situated caucasian co-workers. Burrus was discriminatorily terminated by Chinsky Group.

45. As a direct and proximate result of Chinsky Group's discriminatory practices, Burrus has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees, costs and expenses in this matter.

46. By way of this Complaint, Burrus specifically alleges that Chinsky Group intentionally and/or with reckless disregard, discriminated against him in the terms, conditions

and privileges of his employment on the basis of his race, African American. As a direct result of this discrimination, Burrus has suffered substantial damages.

47. Burrus is seeking from Chinsky Group all available damages under 42 U.S.C. § 1981, including all available compensatory and punitive damages, attorney's fees, expenses and costs, and any and all other equitable relief.

### B.  RACE DISCRIMINATION CLAIM UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

48. Burrus alleges and incorporates herein by reference paragraphs 1 through 47 above.

49. Chinsky Group's discriminatory actions have violated Burrus' rights which are protected by the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

50. Specifically, Burrus was treated in a disparate manner in the terms, conditions and privileges of his employment as compared to other similarly situated caucasian co-workers. Burrus was terminated by Chinsky Group in a discriminatory manner because of his race, African American.

51. As a direct and proximate result of Chinsky Group's discriminatory and racist practices, Burrus has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees, costs and expenses in this matter.

52. By way of this Complaint, Burrus specifically alleges that Chinsky Group intentionally and/or with reckless disregard, discriminated against him in the terms, conditions and privileges of his employment on the basis of his race. As a direct result of this discrimination, Burrus has suffered substantial damages.

53. Burrus is seeking from Chinsky Group all available damages under 42 U.S.C. § 2000e and 42 U.S.C. § 1981a, including all available back pay and benefits, front pay and

benefits, compensatory and punitive damages, attorney's fees, expenses and costs, and any and all other equitable relief and injunctive relief.

### C. CLAIM FOR RETALIATORY DISCHARGE IN CONTRAVENTION OF INDIANA WORKMAN'S COMPENSATION ACT

54. Burrus incorporates herein by reference paragraphs 1 through 53 above.

55. By way of this complaint, Burrus is specifically alleging that Chinsky Group retaliated against him and terminated him for making a worker's compensation claim.

56. Chinsky Group's termination of Burrus' employment is in direct contravention of the Indiana Workman's Compensation Act and the case law thereunder.

57. As a direct and proximate result of Chinsky Group's act of retaliation, Burrus has incurred damages, which damages include, but are not limited to, lost income, lost benefits, future loss of income and benefits, pecuniary losses, embarrassment, humiliation, career damage and mental and emotional stress and anguish on account of the wrongful acts of Chinsky Group.

58. That the retaliatory discharge of Burrus by Chinsky Group constituted conduct which is unconscionable, and further constituted an intentional act in defiance of the legislative intent of the Indiana Workman's Compensation Act, which, if allowed to persist, would effectively thwart the public policy of the State of Indiana. Such conduct on the part of Chinsky Group merits the award of punitive damages against it.

### D. Fair Labor Standards Act Claims

59. Burrus incorporates herein by reference paragraphs 1 through 58 above.

60. Chinsky Group is an "enterprise" as that term is defined by the FLSA (meaning Chinsky Group has and had gross volume of sales greater than $500,000.00 per year in 2017 and 2018) and Chinsky Group is covered by the overtime and minimum wage provisions of the

FLSA.  Chinsky Group is an "employer," as that term is defined by the FLSA.  Finally, Chinsky Group is a "person" as that term is defined by the FLSA.

63. Chinsky Group committed minimum wage violations under the FLSA against Burrus and all similarly situated current and former employees subjected to deductions for costs of uniforms and denied payment of a FLSA minimum wage.

62. Because it took deductions for uniform costs that reduced employee wages below a minimum wage, Chinsky Group violated the FLSA by failing to pay Burrus and every similarly situated current and former employee a minimum wage, as required by the FLSA.

63. Chinsky Group's failure to comply with the FLSA's provisions regarding minimum wages has been willful and without justification, and subjects Chinsky Group to a three year statute of limitations.

64. Burrus and the Plaintiff Class seek all available damages, including unpaid wages, unpaid minimum wages, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Chinsky Group's violations of their rights under the Fair Labor Standards Act.

### E.  CLAIM UNDER THE INDIANA WAGE CLAIMS STATUTE

65. Burrus incorporates herein by reference paragraphs 1 - 64 above.

66. Chinsky Group's failure to pay Burrus his full wages, including the wages it illegally deducted from Vestal's first two pay checks for costs of "uniforms", 1) on time and 2) in full were acts of bad faith.  Burrus is certainly entitled to payment of all of his earned wages, liquidated damages for the late paid wages, and liquidated damages for the unpaid wages. Burrus' right to damages arises under I.C. 22-2-9-4(b), which incorporates the damages provisions of I.C. 22-2-5-2.

67. By way of this Complaint, Burrus is seeking all available damages, including all unpaid wages caused by illegal wage deductions, an additional amount equal to two (2) times his unpaid wages, plus any and all attorney's fees, costs, and expenses, and any other damage which he may be entitled pursuant to Indiana Law.

### VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ladell K. Burrus respectfully requests the Court enter judgment in his favor and against Defendant Chinsky Group, and award to Burrus and all similarly situated collective action plaintiffs all available damages and equitable relief, including, but not limited to, all compensatory and punitive damages to Burrus, all lost wages and benefits to Burrus, all unpaid and wages, unpaid minimum wages, statutory damages, liquidated damages, payment of attorney's fees, costs and expenses to Burrus and the Plaintiff Class, together with any and all available pre-judgment interest, and any other relief which would be just and proper in the premises.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net

### REQUEST FOR TRIAL BY JURY

Comes now Plaintiff Ladell K. Burrus, by his counsel, and hereby requests a trial by jury on issues which may be tried to a jury.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP


By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net